

# THE ATTORNEY GENERAL
## OF TEXAS

### AUSTIN 11, TEXAS

PRICE DANIEL
ATTORNEY GENERAL

March 22, 1948

Hon. Lee Nowlin,
County Attorney,
Hale County,
Plainview, Texas

Opinion No. V-523.

Re: Validity of tax assess-
ments not acted on by
the Board of Equaliza-
tion.

Dear Sir:

We refer to your letter of January 19, 1948, in which you ask:

"Does a county have a legal remedy for the collection of taxes where the Commissioners' Court failed to sit as a Board of Equalization."

As we construe your question, you request an opinion as to whether tax assessments are valid if the Commissioners' Court of Hale County failed to convene as a Board of Equalization and act on the assessment lists and books as provided in Article 7206, V.C.S. We are informed that your inquiry has reference to assessments for the years 1945, 1946, and 1947.

As reflected by the Hale County tax rolls for said years in the office of the State Comptroller, the Assessor and Collector of Taxes placed his oath thereon as provided in Article 7222, V. C. S.; and the Commissioners' Court of Hale County, sitting as a Board of Equalization, placed its certificate of approval there-on, in which it is certified that said Board examined the assessments, corrected the valuations, and examined the rolls and books made up from approved assessments, and found the property was assessed at its true and full value. Such certificates are signed by the County Judge and all of the four County Commissioners of Hale County.

The office of Assessor and Collector of Taxes is created by Section 14 of Article VIII of the State Constitution in which it is provided that ". . . such Assessor and Collector of Taxes shall perform all the duties with respect to assessing property for the purpose of taxation and of collecting taxes as may be prescribed by the Legislature."

Articles 7183-7205 and 7209, 7210, 7211, V.C.S., prescribe the powers and duties of the Assessor and Collector of Taxes which include every act pertaining to listing property for taxation.

Article 7211 authorizes the Assessor and Collector to fix values and provides for appeals by the property owner to the Board of Equalization.  The pertinent part of that article reads, in part:

"Hereafter when any person, firm or corporation renders his, their or its property in this State for taxation to any tax assessor, and makes oath as to the kind, character, quality and quantity of such property, and the said officer accepting said rendition from such person, firm or corporation of such property is satisfied that it is correctly and properly valued according to the reasonable cash market value of such property on the market at the time of its rendition, he shall list the same accordingly; but, if the assessor is satisfied that the value is below the reasonable cash market value of such property, he shall at once place on said rendition opposite each piece of property so rendered an amount equal to the reasonable cash market value of such property at the time of its rendition, and if such property shall be found to have no market value by such officer, then at such sum as said officer shall deem the real or intrinsic value of the property; and if the person listing such property or the owner thereof is not satisfied with the value placed on the property by the assessor, he shall so notify the assessor, and if desiring so to do make oath before the assessor that the valuation so fixed by said officer on said property is excessive; such officer to furnish such rendition, together with his valuation thereon and the oath of such person, firm or officer of any corporation, if any such oath has been made, to the commissioners' court of the county in which said rendition was made, which court shall hear evidence and determine the true value of such property on January First . . . ."

Article 7222, V. C. S., requires the tax assessor to swear that his tax rolls or books are correct, and Article 7223 requires that said officer deliver such lists and statements of property received by him to the Board of Equalization, alphabetically arranged.

Commissioners' Courts, sitting as Boards of Equalization, may ascertain and equalize valuations of property listed for taxation.  Articles 7206 and 7218, provide that such Board shall meet on the second Monday in May of each year or as soon thereafter as practicable before the first day of June, and receive all lists or books of the assessor and see that every person has rendered his property at a fair market value, correct errors, equalize values and return the lists to the assessor, who shall proceed to prepare his tax rolls.

Opinion No. O-6708 by a former Attorney General construes as directory the specification in said articles of the time when such Boards of Equalization shall meet.  A copy of that opinion is enclosed for your information.

Article 7224 provides that the Board of Equalization shall examine the rolls or assessment books and make corrections.  It reads:

"After the board of equalization shall have examined the rolls or assessment books and made all corrections, if any be necessary, the assessor shall send one copy of each to the Comptroller, one copy of each to the collector of his county, and he shall file the other copies in the county clerk's office until the next assessment, when the assessor shall have the right to withdraw them and use as provided in this title. Id."

Article 7225, V.C.S., provides that " . . . . should his rolls or books, when presented for approval to the commissioners' court, prove to be imperfect or erroneous, the court shall have the same corrected or perfected, either by the assessor or some other person than the assessor of taxes. . . ."

Article 7253, R.S., 1925, provides that "When any tax collector shall have received the assessment

rolls or books of the county, he shall receipt to the commissioners' court for the same; and said rolls or books shall be full and sufficient authority for said collector to receive and collect the taxes therein levied."

Haynes v. State, 99 S. W. 405 (Error refused) involved an assessment of unrendered real estate in which the list was not presented to the Board of Equalization. The completed tax roll was sworn to by the assessor and was examined and approved by the Commissioners' Court sitting as a Board of Equalization. The Court said, in part:

"Were the assessments for the years 1900 and 1901 void by reason of the failure of the assessor to list the property for those years and present such lists to the commissioners' court for examination, correction, and approval? The defendant offered to show, and _it was agreed that if permitted he could show_, that, for the years 1900 and 1901, the property was not listed by the tax assessor and that no listing of the same was submitted to the commissioners' court sitting as a Board of equalization. But that the lot was placed upon the assessor's block books, which books were never inspected or approved by said board, and then entered upon the tax rolls, and that said tax rolls were submitted to the commissioners' court sitting as a board of equalization for examination, correction, and approval. _The court sustained an exception to this evidence._ The appellant complains of this action . . . The tax rolls for 1900 and 1901 were presented to, and were examined and approved by, the commissioners' court sitting as a board of equalization. _The particular omission complained of was the failure of the tax assessor to list the property and present the list to the board for approval._ Did this omission render the assessment for the years named void? . . . .

"In the case of State v. Carr (Mo. Sup.) 77 S. W. 543, it was held by the Supreme Court of Missouri, construing the tax laws of that State, that an omission to list the property

was not one of the essentials of the law governing the assessment of property for taxation; that such provision was merely directory and not mandatory, and a failure of the assessor to make out the list did not vitiate the assessment. In this state a substantial compliance with the statute is treated as sufficient to fix a lien for taxes. State v. Farmer, 94 Tex. 235, 59 S.W. 541. It was the duty of the owner of the lot to list it for taxation. This duty he failed to perform. It then became the duty of the assessor to list and assess the lot. He failed to list it, but it was assessed. It is not denied that the property was subject to taxation. It was situated in Dallas county, and was liable for taxation in that county. The tax assessor had full jurisdiction over the property. It is not alleged that the valuation placed upon the property by the assessor, and which the board of equalization approved, was not its true taxable value. It is not denied that the tax assessed against the lot is its proper share of taxes for the years named. Appellant fails to show that he has been injured by the failure of the assessor to list the lot. We are of the opinion that the provision in the statute imposing the duty on the assessor to list the property is directory, and that, in order for the taxpayer to take advantage of such failure, he must show that he has suffered by the omission. State v. Carr, supra, City of Rockland v. Ulmer, supra. . . At the end of the roll was a proper certificate of the assessor, as required by the statute, showing, among other things, 'that the rolls to which this is attached contains a correct and full list of the real and personal property subject to taxation in Dallas county,' etc. This certificate was sworn to by the assessor and the rolls were examined and approved by the board of equalization . . . There was no error in excluding the evidence." (Emphasis added)

We are of the opinion that failure of the Commissioners' Court to convene as a Board of Equalization

does not affect the validity of tax assessments if the completed tax roll is sworn to by the tax assessor and examined and approved by the Commissioners' Court, sitting as a Board of Equalization after completion. We are also of the opinion that the usual procedure is available to enforce payment of the taxes shown on such approved tax rolls.

### SUMMARY

Tax rolls and books prepared by and sworn to by the Assessor and Collector as being correct which are subsequently examined, corrected, and approved by the Commissioners' Court sitting as a Board of Equalization, are valid, notwithstanding failure of the Commissioners' Court to convene as a Board of Equalization as provided in Article 7206 V. C. S.

Yours very truly,

ATTORNEY GENERAL OF TEXAS

By W. T. Williams
Assistant

WTW:wb
Encl.

APPROVED:

ATTORNEY GENERAL